IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LUCAS GREGORI and WILLIAM GOUGE   *
                                  *
          Plaintiffs               *
     v.                            *    Civil No. ELH-16-3853
                                  *
MARKET STREET MANAGEMENT, LLC      *
D/B/A FAMILY MEAL (FREDERICK)      *
          Defendant                *
                                  *
              ********

# MEMORANDUM OPINION[1]

Plaintiffs Lucas Gregori and William Gouge filed suit against defendant Market Street Management, LLC, D/B/A Family Meal (Frederick) ("Market Street"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et. seq.*; the Maryland Wage and Hour Law ("MWHL"), MD. CODE (2016 Repl. Vol.), § 3-401 *et. seq.* of the Labor and Employment Article ("L.E."); and the Maryland Wage Payment and Collection Law ("MWPCL"), L.E. § 3-501 *et. seq.* ECF 2 (Complaint).[2] They assert that Market Street improperly used a tip pool at the Frederick, Maryland location of its restaurant, Family Meal, where Gregori and Gouge worked as waiters from November 2014 through December 2015. ECF 2, ¶¶ 28-29.

---

[1] The case was initially assigned to Judge J. Frederick Motz. The case was reassigned to me on August 16, 2018. *See* Docket.

[2] Plaintiffs filed suit in the Circuit Court for Frederick County on October 18, 2016. ECF 2. Market Street removed the case to this Court on November 30, 2016. ECF 1. At the outset, both plaintiffs were represented by the same counsel. However, on January 12, 2018, counsel filed a consent motion to withdraw from representation of Gouge. ECF 39. That motion was granted on January 16, 2018. ECF 40. Gouge has been self-represented since that date.

Now pending is Market Street's motion for summary judgment. ECF 47.[3] The motion is supported by a memorandum (ECF 47-1) (collectively, the "Motion") and several exhibits.[4] Gregori opposes the motion (ECF 52) and has submitted several exhibits. Gouge failed to file a response after the Clerk issued a Rule 12/56 notice, dated July 25, 2018. ECF 54. Market Street has replied (ECF 53) and submitted another exhibit.

No oral argument is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons set forth below, I shall grant Market Street's Motion.

## I. FACTUAL BACKGROUND

During plaintiffs' employment, Family Meal used a "tip pool," under which Family Meal collected and combined the gratuities from tipped employees, such as plaintiffs, at the end of each shift and entered the tip information into a spreadsheet. ECF 47-2 at 2, Vickers Decl., ¶ 6. The tips were then allocated among tip pool participants, including plaintiffs, based on the number of hours the participants worked during the day. *Id.* On a weekly basis, Family Meal distributed the allocated tips to the tip pool participants as a separate line item on their paychecks. *Id.*, ¶ 7.

According to plaintiffs, managers improperly participated in the tip pool, in violation of the FLSA and MWHL, thereby invalidating the tip pool. They assert that because the tip pool was invalid, Market Street failed to compensate them properly, as required under the relevant law, and they are therefore owed unpaid wages.

---

[3] On January 30, 2017, Judge Motz denied Market Street's motion to dismiss. ECF 22. He then denied plaintiffs' motion for FLSA conditional certification on May 2, 2017. ECF 28.

[4] Market Street collectively filed all of its exhibits at ECF 47-2, making it difficult for the Court to locate each particular exhibit.

Plaintiffs identify four individuals employed by Family Meal who allegedly participated improperly in the tip pool: (1) James Vickers, (2) Lyndsay Rudolph, (3) Josh Cross, and (4) Elizabeth Reap. ECF 2, ¶ 39. At the relevant time, Vickers was the General Manager and Rudolph was the Assistant General Manager. Rudolph became the General Manager in February 2016. *Id.* at ¶¶ 2-3; ECF 47-2 at 2, Vickers Decl., ¶¶ 2-3; ECF 57-2, Rudolph Dep. at 6, Tr. 20:6-11; ECF 47-2 at 4, Rudolph Decl., ¶¶ 3-4.[5]

At Reaps's deposition, which took place after she no longer worked for defendant, she claimed that she worked at Family Meal for five and a half years, in various capacities. These included server, bartender, trainer, shift supervisor, and opener/closer. ECF 52-6, Reap Deposition at 3-4, Tr. 9:2-11:5.

During the relevant time, Cross and Reap were bartenders at Family Meal. ECF 47-2 at 4, Rudolph Decl., ¶ 12. As bartenders, they served food, tended bar, and otherwise interacted with customers. *See*, *e.g.*, ECF 52-1, Gregori Response to Interrogatory 19; ECF 52-6, Reap Deposition at 14-15, Tr. 53:17-54:1; ECF 52-8, Gregori Deposition at 19-20, Tr. 73:17-74-10 (asserting that Reap was a manger). Neither had high-level managerial responsibilities, such as hiring or firing employees, maintaining employee records, or determining how much employees were paid. ECF 47-2 at 2, Vickers Decl., ¶ 8; ECF 47-2 at 4, Rudolph Decl., ¶ 12. Instead, their duties were more analogous to those of low-level supervisors. For example, they participated in interviews, trained new hires, set schedules, and supervised employees. ECF 52-1, Gregori Response to Interrogatory 19; ECF 52-2, Gregori Decl. ¶¶ 18-19. Reap also once exercised discipline against Gregori by writing up Gregori for being late. ECF 52-1, Gregori Response to Interrogatory 13. Gregori claims his subsequent firing was partially based on this write-up. *Id.*

---

[5] Another Declaration of Rudolph appears at ECF 47-2 at 31-32. However, it is unsigned.

It is undisputed that Vickers and Rudulph did not participate in the tip pool. *See*, *e.g.*, ECF 52 (failing to dispute that Vickers and Rudolph were not tip pool participants). By contrast, Cross and Reap participated in the tip pool. But, central to this case, plaintiffs and Market Street disagree over their roles at work and whether their participation in the tip pool was proper. ECF 47-1; ECF 52.

The suit contains three counts: (1) violation of the FLSA (Count I); (2) violation of the MWHL (Count II); and (3) violation of the MWPCL (Count III). ECF 2.[6] In sum, plaintiffs maintain that Cross and Reap were managers under the FLSA and MWHL, and therefore they improperly participated in the tip pool. Conversely, Market Street contends that Cross and Reap were not managers and thus were valid tip pool participants.

Additional facts are included in the Discussion.

## II. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Formica v. Aylor*, ___ F. App'x ___, 2018 WL 3120790, at *7 (4th Cir. June 25, 2018); *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The nonmoving party must demonstrate that there are disputes of material fact so as to

---

[6] Gregori does not discuss the MWPCL in his opposition to Market Street's Motion. But, he attempts to raise a new claim in his opposition: Market Street failed to pay him for "off-the-clock side work," amounting to one or two hours a week. *See*, *e.g.*, ECF 52 at 15-16. Notably, Gregori never raised this claim in his Complaint.

"'At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.'" *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (citation omitted).

4

preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view

all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

In sum, to avoid summary judgment, there must be a genuine dispute as to material fact. In *Iraq Middle Mkt. Dev. Found.*, 848 F.3d at 238, the Court reiterated: "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."

Gregori insists that this matter turns on the credibility of the parties and their witnesses. ECF 52 at 5. Therefore, he argues that summary judgment is not appropriate. *Id.* at 5-6. Market

Street maintains that the undisputed evidence supports its position.

### III. DISCUSSION

#### A. Counts I and II

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*); *see Encino Motorcars, LLC v. Navarro*, ___U.S.___, 136 S. Ct. 2117, 2121 (2016); *Morrison v. Cnty. of Fairfax, Va.*, 826 F.3d 758, 761 (4th Cir. 2016); *see also McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) ("Congress enacted the FLSA to protect 'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'") (citations omitted).

Among its provisions, "the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134, 1138 (2018) (citation omitted); *see Perez v. Mortgage Bankers Ass'n*, ___U.S.___, 135 S. Ct. 1199, 1204 (2015); *Integrity Staffing Solutions, Inc. v. Busk*, ___U.S.___, 135 S. Ct. 513, 516 (2014); *see also Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) ("The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'") (quoting *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011)). In particular, the FLSA has established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir.

2008) (quoting 29 U.S.C. § 207(a)(1)).

Thus, the FLSA is now "best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted). As the Fourth Circuit said in *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1266-67 (4th Cir. 1996): "The two central themes of the FLSA are its minimum wage and overtime requirements. . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." (Internal quotations omitted).

Generally, the MWHL also governs minimum wages and overtime. *See* L.E. §§ 3-413, 3-415, 3-420. It authorizes an employee to bring an action against an employer to recover unpaid wages due under the statute. L.E. § 3-437. *See generally Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2005). The term "wage" is defined as "all compensation that is due to an employee for employment." L.E. § 3-401(d).

The MWPCL, also known as the Wage Act, "sets *specific terms* for payment mandated elsewhere in the Wage and Hour Law." *Campusano v. Lusitano Construction, LLC*, 208 Md. App. 29, 37, 56 A.2.3d 303, 308 (2012) (emphasis in *Campusano*). Like the MWHL, the MWPCL provides an employee with the right to bring a civil suit against an employer to recover unpaid wages. *See* L.E. § 3-507.2(a);[7] *Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 382-83, 780 A.2d. 303, 312-13 (2001); *Mohiuddin v. Doctors Billing & Management Solutions, Inc.*, 196 Md. App. 439, 446, 9 A.3d 859, 863 (2010) (citations omitted).

The Wage Act "protects employees from wrongful withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corporation, t/a BB&T*, 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004) (citing L.E. § 3-505). "The principal purpose of the Act

---

[7] This provision was previously codified at L.E. § 3-507.1. *See* Section 1, Ch. 151, Acts of 2010.

'was to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002) (citation omitted). The Wage Act does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo*, 373 Md. at 513, 819 A.2d at 362.

The term "wage" includes commissions, bonuses when they are compensation for services and not a gratuity, and work-related incentive fees. L.E. § 3-501(c)(2); *see Medex*, 372 Md. at 35-37, 811 A.2d at 302; *Whiting-Turner v. Fitzpatrick*, 366 Md. 295, 306; 783 A.2d 667, 673 (2001). If "a court finds that an employer withheld the wages of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." L.E. § 3-507.1(b).

The current federal minimum wage is $7.25 an hour.[8] And, overtime compensation must be paid "at a rate not less than one and one-half times" the employee's regular rate. 29 U.S.C. §§ 206, 207.

There is an exception to the minimum wage rule with regard to a "tipped employee." "The FLSA requires covered employers to pay 'nonexempt employees' a minimum wage for each hour worked, 29 U.S.C. § 206(a), but allows employers to pay less than the minimum wage to employees who receive tips, 29 U.S.C. § 203(m)." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680 (D. Md. 2012).

---

[8] For the period prior to January 1, 2015, the Maryland minimum wage was also $7.25 per hour. However, from January 1 to June 2015, it was $8.00 per hour. Then, from July 2015 through August 2015, the hourly minimum wage increased to $8.25. *See* Md. Code, L.E. § 3-419; Code of Maryland Regulations 09.12.41.19.

A tipped employee is defined as an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Tipped employees must still receive at least the minimum wage, but an employer may take a "tip credit" to reach this wage. 29 U.S.C. § 203(m).

Clearly, an employer cannot be a tipped employee. And, of import here, the FLSA defines employer to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 USC § 203(d).

In *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011), the court explained that tipped employees "are required to receive at least the minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement." In other words, "an employer satisfies the FLSA if he pays his tipped employees at least $2.13 per hour, and that wage, in conjunction with the tips they receive, make up at least the $7.25 per hour minimum wage." *Id.* In Maryland, the required direct wage for tipped workers is $3.63. L.E. § 3-419(c). And, the parties agree that plaintiffs received that rate of pay for "on-the-clock" work. ECF 52 at 14.

Tipped employees have the right to retain all of their tips under the FLSA unless there is a valid tip pooling arrangement. 29 U.S.C. § 203(m). If a tip pool includes either (1) employees who do not perform customer service functions or (2) managers, "'then the tip pool is invalid and the employer is not permitted to take a tip credit.'" *Gionfriddo*, 769 F. Supp. 2d at 893 (some internal quotation marks omitted) (quoting *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n. 3 (S.D. Fla. 2009)); *see also Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 240 (2d Cir. 2011) ("[A]n employer loses its entitlement to the tip credit where it requires tipped employees to share tips with 1) employees who do not provide direct customer

service or 2) managers."). In addition, in order to take advantage of the tip credit, employees must (1) be "informed by the employer of the provisions of this subsection," and (2) "all tips received by such employee [must] have been retained by the employee." 29 U.S.C. § 203(m)(2)."

An employee with some managerial responsibility is not necessarily barred from participating in a tip pool. But, to be included, such persons must satisfy the requirement of being employees who customarily and regularly received tips. *See* 29 U.S.C. § 203(m). Conversely, personnel whose managerial roles are sufficient to render them statutory employers under 29 U.S.C. § 203(d) are not eligible to participate. Because they are regarded as acting in the interests of the employer, they are not regarded as employees.

The burden is on the employer to prove compliance with the tip credit requirements. *See*, *e.g.*, *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011). Among other things, the employer must demonstrate that it "satisfied the FLSA's notice requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." *Prusin v. Canton's Pearls, LLC*, JKB-16-0605, Nov. 6, 2017, 2017 WL 5126156, at *4 (D. Md. Nov. 6, 2017) (citation and internal quotation marks omitted).

The MWHL does not restrict tip pooling. *See* L.E. § 3-419(a)(2); Code of Maryland Regulations 09.12.41.19. In *Mould v. NJG Food Serv., Inc.*, JKB-13-1305, 2014 WL 2768635, at *4 (D. Md. June 17, 2014), the court said: "The MWHL itself does not explicitly place any restrictions on tip pooling arrangements. However, 'in light of the congruent nature of the FLSA and the MWHL,' this Court has previously read the FLSA tip pooling requirements into the

11

MWHL." (quoting *Gionfriddo*, 769 F. Supp. 2d at 895); *see also McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245-46 (4th Cir. 2016).

### 1. Vickers and Rudolph

It is uncontested that, during the relevant time period, Vickers and Rudolph worked as managers at Family Meal. ECF 47-2 at 2, Vickers Decl., ¶¶ 2-3; ECF 47-2 at 4, Rudolph Decl., ¶¶ 3-4. As managers, they did not perform customer service functions. *Id.* Accordingly, their participation in the tip pool would have violated the applicable laws and invalidated the tip pool.

However, Market Street and Gregori agree that Vickers and Rudolph did not participate in the tip pool. *Id.*; ECF 52 (failing to dispute that Vickers and Rudolph were not tip pool participants). Moreover, there is no documentary evidence showing that they received tips as part of their compensation. Therefore, there were no FLSA or MWHL violations based on defendant's compensation to Vickers and Rudolph.

### 2. Reap and Cross

#### a. Customer Service Functions

The first tip pool requirement of the FLSA and MWHL is that the tip pool only include employees who "provide direct customer service." *Shahriar*, 659 F.3d at 240. This restriction stems from the FLSA definition of "tipped employees." 29 U.S.C. § 203(t). To meet this requirement, each employee included in the tip pool must perform "important customer service functions," meaning that each employee must engage in "more than *de minimis* service interaction with customers." *Wajcman v. Inv. Corp. of Palm Beach*, No. 07-80912, 2008 WL 783741, at *3 (S.D. Fla. March 20, 2008) (citing *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294 (6th Cir. 1998)).

Reap and Cross both performed "important customer service functions" at Family Meal. Rudolph, as Assistant General Manager of Family Meal, testified that Reap and Cross were bartenders, and their primary duty was to "serve customers." ECF 47-2 at 4-5, Rudolph Decl., ¶ 12. They "bussed tables…served…bartended…hosted…did dishes…regularly served guests and customers." In other words, they did "everything." ECF 47-2, Rudolph Deposition at 18-20, Tr. 154:3-17.

Reap testified that she "spent most of [her shifts] bartending." ECF 52-6 at 14-15, Tr. 53:17-54:1. Gregori also recognized the customer service functions they performed. In his interrogatory answers, Gregori acknowledged that Reap and Cross acted as opening bartenders, in addition to their supervisory responsibilities. ECF 52-1, Gregori Response to Interrogatory 19. Gregori also testified that Reap interacted with customers, made drinks at the bar, and served customers. ECF 52-8, Gregori Deposition at 19, 34, Tr. 73:17-21, 130:3-12. Because both Reap and Cross were bartenders who, as such, interacted with customers, the requirement that tip pool participants "provide direct customer service" is satisfied. *See Shahriar*, 659 F.3d at 240.

### b. Managerial Status

As indicated, the FLSA prohibits employers from retaining tips received by its employees for any purposes. 29 U.S.C. § 203(m). This prohibition extends to statutory employers, such as managers. *Id.* "The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the 'employers' themselves." *Wajcman*, 2008 WL 783741, at *3 n. 1 (citing *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)).

To determine whether an individual is a manager, courts examine the "economic reality of [the] individual's status in the workplace." *Gionfriddo*, 769 F. Supp. at 890. Factors

13

informing this determination are "the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Id.*

Reap and Cross were not managers or statutory employers. Gregori argues otherwise, based on the various responsibilities of Reap and Cross, beyond interacting with customers. Those responsibilities, however, are analogous to the responsibilities of lower level supervisors, and other courts have found such responsibilities insufficient to qualify lower level supervisors as managers for purposes of tip pooling. For example, Reap and Cross set schedules; they had authority to send employees home, depending on the restaurant's business; they trained employees; and, in general, they supervised other employees' work. *See*, *e.g.*, ECF 52-1, Gregori Response to Interrogatory 19; ECF 52-6, Reap Deposition at 14, Tr. 53:17-54:1; ECF 52-8, Gregori Deposition at 19, Tr. 73:17-21. They did not, however, have any authority over hiring or firing. ECF 47-2 at 2, Vickers Decl., ¶ 8; ECF 47-2 at 4, Rudolph Decl., ¶ 12. They also did not maintain employee records or determine employees' pay rates or methods of pay. *Id.*

In a factually analogous case, a restaurant included in its tip pool senior servers who "exercised some control over employees, such as sending them home, requesting additional staff, and supervising their work." *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 653 (N.D. Ill. 2007). The court concluded that these servers were "[a]t most…low-level supervisors who [could not] be considered employers under the FLSA." *Id.* In reaching this conclusion, the court emphasized that the senior servers lacked authority over hiring and firing, had no role in determining rates and methods of employee pay, and did not maintain employee records. *Id.* These duties almost identically track the duties of Reap and Cross in this case, showing that

Reap and Cross were "[a]t most…low-level supervisors" and were not managerial employees under the FLSA or MWHL. *See id.*[9]

As further evidence that Reap and Cross were not managers, Reap and Cross lacked authority to hire and fire employees. Although Reap and Cross participated in some employee interviews, including Gregori's, such participation does not show they were employers. ECF 52-1, Gregori Response to Interrogatory 19; ECF 52-2, Gregori Decl., ¶ 18; *see Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 176 (D.D.C. 2011) ("Being involved in the hiring process, by interviewing and making recommendations, does not make someone an employer.").

Similarly, the evidence that Reap once disciplined Gregori with a write-up is insufficient to show any authority over hiring or firing. ECF 52-1, Gregori Response to Interrogatory 13. In a similar case, a court found that even "evidence of a single incident in which [the maître d'] *terminated* an employee [was] insufficient to create a genuine issue regarding [the maître d's] overall authority." *Arencibia*, 831 F. Supp. 2d at 176 (emphasis added). Because there was no other evidence showing the maître d' had hired, fired, or disciplined other employees, the court concluded that the single incident of termination was "simply an aberration, and ultimately [did] not undermine the Court's conclusion that [the maître d'] did not have the authority to hire, fire, or discipline employees." *Id.*

---

[9] The senior servers in *Morgan* did not schedule employees like Reap and Cross did in this case. *Morgan*, 625 F. Supp. 2d at 653. This minor difference, however, does not compel a different conclusion because other courts have found that an individual's responsibility for drafting schedules does not show that the individual "has sufficient supervisory capacity to be considered an employer." *See Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 177 (D.D.C. 2011) (finding that a restaurant's maître d' was not an employer where the maître d' drafted the initial employee schedule).

Analogous reasoning applies here. Evidence of one incident where Reap wrote up Gregori, without any other evidence of Reap hiring, firing, or disciplining any other employee, is insufficient to show that Reap had authority to hire, fire, or discipline employees.

In light of the customer service responsibilities of Reap and Cross, and their lack of managerial authority, Reap and Cross were not statutory employers or managerial employees under the FLSA or MWHL and were therefore proper tip pool participants. Accordingly, I shall grant summary judgment in favor of Market Street as to plaintiffs' FLSA and MWHL claims.

### B. Count III

"[T]he MWPCL…grants employees a private right of action where an employer fails to pay wages lawfully due." *Mould*, 2014 WL 2768635, at *3 (citing *Marshall v. Safeway Inc.*, 88 A.3d 735, 743-46 (Md. 2014)). As noted, Gregori does not discuss the MWPCL in his opposition.

Because the tip pool used by Family Meal did not include any improper participants and was otherwise valid, Gregori and Gouge are not owed any wages. Accordingly, there was no MWPCL violation.

### IV. CONCLUSION

For the aforementioned reasons, I shall grant Market Street's motion for summary judgment (ECF 47). A separate Order follows.


Date: September 28, 2018                          /s/
                                                  Ellen L. Hollander
                                                  United States District Judge